SEALED BY ORDER OF COURT

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

FILED
MAR 4 - 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Alex E. Taylor | ) | Case No. |
| | ) | CR 19 70328 MAG |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __at least 12/24/18 through 3/1/19__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 912 | Pretending to Be an Officer of the United States |
| 18 U.S.C. § 701 | Unlawful Possession of Official Badges, Identification Cards, or Other Insignia |
| 18 U.S.C. §§ 506(a)(2) and (3) | Use and Possession of a Counterfeit Seal of an Agency of the United States |

This criminal complaint is based on these facts:
See Affidavit of SA Jason Cheng, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

Approved as to form _/s/_
AUSA Pitman

*Complainant's signature*

FBI Special Agent, Jason Cheng
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/1/19

*Judge's signature*

City and state: San Jose, California

Susan van Keulen, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF DEA TASK FORCE AGENT/FBI SPECIAL AGENT JASON CHENG IN SUPPORT OF ARREST AND COMPLAINT

## I. INTRODUCTION AND AFFIANT'S BACKGROUND

I, Jason Cheng, a Special Agent with the Federal Bureau of Investigation ("FBI") and a Task Force Agent with the Drug Enforcement Administration ("DEA"), San Jose, California, being first duly sworn, hereby depose and state as follows:

### A. THE PURPOSE OF THIS APPLICATION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging violations of Title 18 U.S.C. §§ 506(a)(2) and (3) (Use and Possession of a Counterfeit Seal of an Agency of the United States), Title 18 U.S.C. § 701 (Unlawful Possession of Official Badges, Identification Cards, or Other Insignia), and Title 18 U.S.C. § 912 (Pretending to be an Officer of the United States).

### B. AFFIANT BACKGROUND

2. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

3. I am an FBI Special Agent currently assigned as a Task Force Agent to the DEA San Jose Resident Office ("SJRO"). As a Special Agent with the FBI, my investigations focus on large-scale narcotics offenders. I have been employed by the FBI since July 2014. Prior to being assigned to SJRO, I was assigned to the Laredo Resident Agency of the San Antonio Division from 2014 to 2017. I received twenty weeks of specialized training at the FBI Academy in Quantico, Virginia. This training included several hundred hours of comprehensive, formalized instruction in, among other things, basic narcotics investigations, detection, interdiction, United States narcotics laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.

4. The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation and through information provided by other Special Agents and

1

investigators from the FBI, the DEA, the Department of Transportation ("DOT"), the Santa Clara County Sheriff's Office and California Highway Patrol ("CHP"). The following is not an exhaustive enumeration of the facts I have learned during the course of this investigation, but are the facts I believe sufficient to establish probable cause.

5. Because this is an ongoing investigation, we ask that this application and affidavit, and the warrant be filed under seal so that the targets are not prematurely alerted to the existence of this investigation and/or the scope and direction of the investigation.

## II. TARGET OFFENSES

6. Title 18 U.S.C. §§ 506(a)(2) and (3) make it a crime to knowing use or possess with fraudulent intent a counterfeit seal of an agency of the United States.

7. Title 18 U.S.C. § 701 makes it a crime to possess any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof, except as authorized under regulations made pursuant to law.

8. Title 18 U.S.C. § 912 makes it a crime to falsely assume or pretend to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value.

## III. FACTS ESTABLISHING PROBABLE CAUSE

9. On December 24, 2018, DOT Assistant Special Agent in Charge L.G. ("ASAC L.G.") was in her personally owned vehicle ("POV") when she observed a dark colored sedan with emergency lights on behind her. ASAC L.G. stated that she pulled to the curb at the intersection of Chelsea and Stratford Drive in San Jose. ASAC L.G. stated that the dark colored sedan pulled up behind her POV and parked. ASAC L.G. observed an unidentified male ("UM") exit the sedan and approach the driver's side window of her POV. ASAC L.G. further described the UM as a white male with brown hair, approximately 45 - 50 years old with a gold DEA badge around his neck.[1] ASAC L.G. rolled her

---

[1] Based on ASAC L.G.'s personal and professional relationships she is familiar with legitimate DEA badges.

window down as the UM approached her vehicle. The UM identified himself as a DEA agent and asked ASAC L.G. where she was going in such a hurry. ASAC L.G. stated that she was going to mass. ASAC L.G. stated "DEA huh? Since when does DEA make vehicle stops?" The UM replied something to the effect of "we do it all the time." ASAC L.G. asked the UM what office he worked out of because she knows several DEA agents. The UM replied that he "works all over." ASAC L.G. told the UM he could not write her a ticket and the UM disputed that and replied that he could. ASAC L.G. again stated that he could not write her a ticket and identified herself as a federal agent. The UM told her to have a nice day and returned to his vehicle. The UM did a U-turn and departed the area. ASAC L.G. noticed the vehicle was a Volkswagen sedan and did not get a license plate on the vehicle.

10. On February 12, 2019, DEA Special Agent Casey Rettig ("SA Rettig") learned of a Volkswagen Jetta with emergency lights that had been observed in November 2018 by Santa Clara County Sheriff's Office Deputy Steven Fernandes ("Deputy Fernandes ") on southbound Highway 85. On February 22, 2019, SA Rettig learned that on or about November 28, 2018, Deputy Fernandes was off duty and driving on Highway 85 south near Saratoga Avenue when he observed a Bob's Towing Tow Truck pass him with the hazard lights on. Shortly thereafter, Deputy Fernandes observed a dark colored Volkswagen Jetta with red/blue lights on pass him. Deputy Fernandes observed the lights were located on the front grill, windshield, and back window of the vehicle. Furthermore, Deputy Fernandes observed that these lights did not appear to be a "government" or law enforcement type of lights. As a result, Deputy Fernandes took down the Jetta license plate as CA 5XFP248[2] ("Subject Vehicle"). Deputy Fernandes then merged onto Highway 17 south and as he approached the Lark Avenue exit he observed the Jetta pulled over to the right shoulder behind the Bob's Towing Tow Truck. Deputy Fernandes observed a male, approximately 6' tall, 180 lbs., with dark brown hair wearing blue jeans and a black hoodie or jacket approach the tow truck driver's side window. The following week Deputy Fernandes ran a query of the Subject Vehicle and learned that the vehicle is registered to Alex TAYLOR. Deputy Fernandes then located the CA driver's license of TAYLOR. Deputy Fernandes informed SA Rettig he was "99% sure" it was the same person he observed getting out of the Jetta with

---

[2] Based on CA DMV database checks CA 5XFP248 is a 2006 Volkswagen, 4 door, VIN: 3VWRG7156M666351, registered to Alex Evan Taylor, 556 Gilbert Ave., Menlo Park, CA 94025.

emergency lights. Deputy Fernandes called Bob's Towing about the suspicious stop he observed on Highway 17 the week prior. Deputy Fernandes spoke with a receptionist at the Tow Company who was translating for the tow truck driver ("Witness #1), who had been pulled over by the Jetta. Witness #1 confirmed he was pulled over the previous week by a dark colored car on Highway 17. Witness #1 said the man from the dark colored car approached him and said "Do you want to die today?" No further information was given to Deputy Fernandes regarding the encounter.

11. On February 14, 2019, DEA Special Agent Hilda Rubino ("SA Rubino") and SA Rettig showed ASAC L.G. a LinkedIn profile photo of Alex TAYLOR. ASAC L.G. positively identified TAYLOR as the individual who pulled her over on December 24, 2018.

12. On February 22, 2019, SA Rubino and SA Rettig spoke with Witness #1 regarding his interaction with TAYLOR in late 2018. Witness #1 stated that he was working for Bob's Towing late last year when he received a call instructing him to respond to assist CHP in towing a vehicle that was involved in an accident on Highway 17 north of the summit in Los Gatos. Witness #1 said that he was traveling on Highway 85 and noticed a dark colored vehicle following closely behind him. Witness #1 recalled having the emergency lights of his truck turned on and said that was traveling at about 70 miles an hour. Witness #1 stated that when he merged onto southbound Highway 17, the vehicle behind him activated what Witness #1 described as police lights. Witness #1 pulled his truck over to the side of the road in the area of Lark Avenue. A middle aged white male, later identified as Alex TAYLOR by Witness #1, approached Witness #1 truck and asked him in English if Witness #1 wanted to die today. Witness #1 said that TAYLOR wore regular clothing, and Witness #1 thought that his line of questioning was unusual so he asked the man for his identification. TAYLOR took a gold badge out and showed it quickly to Witness #1 before putting it away again. Just then a vehicle came so close to where TAYLOR was standing, Witness #1 said that TAYLOR was almost hit by the vehicle that was traveling at a high rate of speed. Witness #1 told TAYLOR that they were not stopped at a safe area. TAYLOR asked to see Witness #1 driver's license. Witness #1 initially refused to show his driver's license and asked to see TAYLOR's identification again. TAYLOR refused and Witness #1 ultimately showed him his license. TAYLOR looked at it quickly and told him that he had stopped him because his emergency lights were bothering other drivers. Witness #1 explained that he was responding to a traffic accident to

4

assist the CHP and asked again to see TAYLOR's identification. TAYLOR then got into his vehicle and drove away. SA Rubino asked Witness #1 if he would be able to identify the man who pulled him over from a photograph. SA Rubino sent Witness #1 a photograph of Alex TAYLOR. Witness #1 immediately responded to SA Rubino and told her that the man in the photograph was the same man who pulled him over in his tow truck.

      13. On February 27, 2019, at approximately 5:34 pm, CHP dispatch received a call from an individual ("Witness #2) about the Subject Vehicle with police department lights on southbound Highway 85.

      14. On February 28, 2019, SA Rettig contacted Witness #2 regarding his observations of the Subject Vehicle. Witness #2 stated that on the previous day he was travelling southbound on Interstate 280 when he observed the Subject Vehicle behind him. As Witness #2 merged onto southbound Highway 85 the driver of the Subject Vehicle "flashed" red and blue lights. Witness #2 said he did not think these lights looked "normal" and called CHP dispatch. The driver of the Subject Vehicle then turned the lights off and pulled in front of him. Witness #2 said there were small antennas on the trunk of the Subject Vehicle. Witness #2 added there were also red and blue lights on the front of the Subject Vehicle, lights on the back of the Subject Vehicle, and that he heard a siren come from the Subject Vehicle. Witness #2 stated he observed the Subject Vehicle get into the carpool lane and use the lights on the vehicle to pull someone over. Witness #2 said he saw the vehicle in the carpool lane merge all the way onto the shoulder with the Subject Vehicle behind it. Witness #2 added that as soon as the Subject Vehicle made its way onto the shoulder it veered back into traffic. Witness #2 observed the Subject Vehicle then get back into the carpool lane. Witness #2 stated that the driver appeared to be laughing. Witness #2 described the driver as a primarily Caucasian male, maybe a little Hispanic, with short dark hair, either brown or black, and facial scruff.

      15. On February 28, 2019, at approximately 6:05 pm., CHP dispatch received calls about the Subject Vehicle driving erratically and at a high rate of speed on the shoulder in the vicinity of southbound State Route ("SR") 85 and Interstate 280 interchange. At approximately 6:30 pm, CHP Officer J. Martinez ("Officer Martinez ") located and pulled over the Subject Vehicle on southbound SR 85. Officer Martinez contacted the driver of the Subject Vehicle and requested his driver's license,

1  registration, and proof of insurance. Officer Martinez identified the driver as Alex Evan TAYLOR, date
2  of birth 01/27/1970 via his California ID card. Officer Martinez noted that TAYLOR appeared to be
3  nervous and fiddled with his documents. TAYLOR told Officer Martinez he was a veteran and stated
4  that he thought his license was suspended. Officer Martinez told TAYLOR that the reason for the stop
5  was because a "Be On The Look Out" ("BOLO") was issued for a black Jetta driving on the shoulder of
6  the freeway. TAYLOR denied driving on the shoulder of the freeway. Officer Martinez conducted a
7  check of TAYLOR's license through law enforcement databases, which returned a suspended driver's
8  license. Officer Martinez asked TAYLOR if he knew his license was suspended. TAYLOR told Officer
9  Martinez that it had to do with a previous DUI and he was going to take care of it ASAP. While
10 speaking with TAYLOR, Officer Martinez observed several aftermarket accessories affixed throughout
11 TAYLOR's vehicle. Officer Martinez observed multiple switches, buttons, and cords feeding into
12 different apparatuses that appeared to Officer Martinez to not be part of the vehicle's original
13 manufactured state. According to Officer Martinez, the buttons, switches, and cords appeared to
14 operate, control, or activate several different types of lights throughout the vehicle. Officer Martinez
15 observed that the cords were plugged into some sort of power source from within the vehicle's
16 passenger compartment. Officer Martinez also observed rectangular lights affixed to the windshield just
17 underneath and behind the rear view mirror, and lights mounted on the rear window just underneath the
18 roof line facing outward. All of the buttons, switches, and apparatuses were easily within reach of the
19 seated driver and could be operated while the vehicle was in transit. Officer Martinez told TAYLOR
20 that the BOLO may not have been him because he seemed to be driving normally when Officer
21 Martinez observed him. Officer Martinez told TAYLOR to take care of his driver's license issues and
22 he was not supposed to be driving without a valid license. TAYLOR stated he understood and that he
23 was almost home. TAYLOR was released with a verbal warning for driving on a suspended license and
24 advised to take care of the suspension through the Department of Motor Vehicles.
25     16.     At approximately 7:45 pm, Officer Martinez contacted the reporting party ("Witness #3")
26 of the BOLO to inquire about their observations. Witness #3 told Officer Martinez that he/she was
27 driving on southbound Interstate 280, north of southbound SR 85 when he/he observed the Subject
28 Vehicle driving at a high rate of speed in the carpool lane. Witness #3 stated that "he was driving very

fast" and estimated the Subject Vehicle was travelling at 100 mile per hour in the carpool land. Witness #3 was several hundred feet behind the Subject Vehicle when he/she observed the Subject Vehicle activate flashing red and blue lights at the rear of the Subject Vehicle and weave through traffic. Witness #3 decided to call police because he/she thought it was odd for a "regular car" to have "enforcement lights." Witness #3 reported that the Subject Vehicle had several antennas affixed to the rear. Witness #3 stated that he/she saw the Subject Vehicle take the SR-85 ramp towards Gilroy and suddenly stop on the shoulder. Witness #3 stated that it appeared the Subject Vehicle was just parked waiting for something and noted that there were no other vehicles around the Subject Vehicle. Witness #3 lost sight of the Subject Vehicle as he/she continued driving heading southbound on Interstate 280.

17.     On February 28, 2019, DEA Special Agent Erik Wolf ("SA Wolf") conducted a commercial database check of TAYLOR and learned that TAYLOR is associated with 4768 Hatfield Walkway, #4, San Jose, CA ("Subject Residence"). That same date, SA Wolf drove by the Subject Residence and observed the Subject Vehicle parked in the carport with unit #4 directly above. SA Wolf noted that the Subject Residence is located near Good Samaritan Hospital.

18.     On March 1, 2019, DEA agents and I participated in a surveillance of the Subject Residence. At approximately 7:29 a.m. DEA Special Agent Nick Perkins ("SA Perkins") observed TAYLOR exit the front door of the Subject Residence. SA Perkins took photos of TAYLOR exiting the Subject Residence. A copy of one of the photos SA Perkins took of TAYLOR exiting the Subject Residence is attached is Exhibit 1. The photographs show TAYLOR wearing a gold badge that closely resembles the DEA badge around his neck. TAYLOR walked to the Subject Vehicle. TAYLOR then walked to the dumpster to throw away trash. As TAYLOR turned away from the dumpster, DEA Special Agent Dan Tush ("SA Tush") observed TAYLOR adjust what appeared to be a firearm on his right hip concealed underneath his t-shirt. SA Perkins observed TAYLOR walk toward the direction of the Subject Vehicle and out of view. Shortly thereafter agents observed TAYLOR depart the area in the Subject Vehicle. As TAYLOR departed the area, SA Tush observed a light bar suctioned-cupped above the dash on the windshield of the Subject Vehicle.

19.     On March 1, 2019, I queried DEA databases and learned that TAYLOR is not an employee with the DEA.

20. Based on my training and experience and my current assignment as a Task Force Agent at the DEA San Jose Resident Office I know the DEA badge is gold in color.

## IV. CONCLUSION

21. Based on the foregoing, I believe TAYLOR has committed violations of 18 USC. §§ 506(a)(2) and (3), 701, and 912.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

JASON CHENG
Special Agent, FBI
Task Force Agent, DEA

SUBSCRIBED and SWORN to before me this ____ day of March, 2019.

THE HONORABLE SUSAN VAN KEULEN
UNITED STATES MAGISTRATE JUDGE

8

# EXHIBIT 1



AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 912 - Pretending to Be an Officer of the United States
18 U.S.C. § 701 - Unlawful Possession of Official Badges, Identification Cards, or Other Insignia
18 U.S.C. §§ 506(a)(2) and (3) - Use and Possession of a Counterfeit Seal of an Agency of the United States

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: see attached sheet

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

**DEFENDANT - U.S**
► ALEX E. TAYLOR

DISTRICT COURT NUMBER
CR 19 70328 MAG

FILED MAR 4 - 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE, CALIFORNIA

---

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
FBI SA Jason Cheng

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY  [ ] DEFENSE
} SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    DAVID L. ANDERSON
[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    AUSA Mike Pitman

**DEFENDANT**

**IS NOT IN CUSTODY**
1) [X] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ► _____
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction  } [ ] Federal  [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [✓] Yes  [ ] No  } If "Yes" give date filed _____

DATE OF ARREST ► Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ► Month/Day/Year _____

[ ] This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT    Bail Amount: None

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____    Before Judge: _____

Comments:

18 U.S.C. §§ 506(a)(2) and (3)
Maximum term of 5 years imprisonment
Maximum term of supervised release of 3 year
Maximum fine of $250,000
Mandatory special assessment of $100

18 U.S.C. § 912
Maximum term of 3 years imprisonment
Maximum term of supervised release of 1 year
Maximum fine of $250,000
Mandatory special assessment of $100

18 U.S.C. § 701
Maximum term of 6 months imprisonment
Maximum term of supervised release of 1 year
Maximum fine of $5,000
Mandatory special assessment of $10